UNITED STATES of America, Plaintiff,

v.

Foutanga Dit Babani ˙SISSOKO,
Defendant.

No. 96–759–CR.

United States District Court,
S.D. Florida.

Sept. 3, 1997.

Richard J. Scruggs, Stephen J. Binhak, Asst. U.S.Attys., Miami, FL, for Plaintiff.

Alfonso J. Perez, Haley, Sinagra & Perez, Miami, FL, Thomas Spencer, Spencer & Klein, Miami, FL, Theodore Klein, Bierman, Shohat, Loewy & Perry, Miami, FL, for Defendant.

### *ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION*

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon The Gambia's Motion to Stay Proceedings and Dismiss the Case (D.E.190). THE MATTER was referred to the Honorable Ted E. Bandstra, United States Magistrate. A Report and Recommendation ("R & R") dated July 3, 1997 has been filed, recommending that the motion to stay and dismiss be DENIED. The Gambia filed objections to the R & R, to which the United States responded and in support of which The Gambia replied. The Court has reviewed the entire file and record herein, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that United States Magistrate Judge Ted E. Bandstra's Report and Recommendation of July 3, 1997 be, and the same is, hereby ADOPTED as set forth herein and The Gambia's Objections are OVERRULED.

BACKGROUND

On January 15, 1997, in the U.S. District Court for the Southern District of Florida, Foutanga Dit Babani Sissoko ("Sissoko")

pled guilty to the charge of paying a gratuity in violation of 18 U.S.C. § 201(c)(1)(A). The Court set sentencing for March 4, 1997. In late February, counsel on behalf of The Gambia filed a motion to dismiss the case against Sissoko on the grounds of diplomatic immunity pursuant to the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227, 500 U.N.T.S. 95 ("Vienna Convention") and the Diplomatic Relations Act, 22 U.S.C. § 254d. The Court sentenced Sissoko as scheduled and referred The Gambia's motion to the Honorable Ted E. Bandstra, United States Magistrate Judge. The Magistrate Judge held an evidentiary hearing on June 5 and 6 and issued his report on July 3, 1997.

In his Report, Magistrate Judge Bandstra found that this Court had jurisdiction over Sissoko, that The Gambia had standing to assert diplomatic immunity on behalf of Sissoko and that The Gambia had not waived the issue of Sissoko's diplomatic immunity by its belated assertion of said immunity. Magistrate Judge Bandstra then found that The Gambia had designated Sissoko as a "Special Advisor to a Special Mission to the United States," which designation the United States

> appeared to 'accept' . . . at least to the extent that the United States, through the United States Embassy in Banjul, issued an A–2 visa to Sissoko and wrote on the visa application 'Diplomatic: Official Mission' when issuing the visa.

R & R at 15.

The Magistrate Judge framed the dispositive question as "whether Sissoko's status as a Special Advisor on a Special Mission to the

United States entitles him to diplomatic immunity." *Id.* The Magistrate Judge found that Sissoko's status as "special advisor" did not entitle him to diplomatic immunity, because he had not been submitted to the U.S. State Department for certification.[1] Moreover, the Magistrate Judge noted that The Gambia never notified the State Department of Sissoko's diplomatic status and that Sissoko had only applied for a visa. The Magistrate Judge concluded that any expectation that Sissoko would be afforded full diplomatic immunity was unreasonable, especially in light of the fact that the Gambia was aware of and had used the mechanism to certify a diplomat pursuant to the Circular Diplomatic Note.[2]

■ In its objections to the Report, The Gambia contends that Sissoko was a diplomat of The Gambia, that he was accepted as such by the United States, and that the United States' prosecution of Sissoko was barred by diplomatic immunity. Crucial to The Gambia's argument is the assumption that a member of a special mission is entitled to full diplomatic immunity without performing the accreditation process set forth for members of a permanent mission in the Diplomatic Relations Act and the Vienna Convention. The Gambia argues that the procedures set forth in the diplomatic circular note are inapplicable because they apply only to diplomats assigned to permanent missions. The Gambia argues that, in the absence of governing U.S. law, this Court must look to "customary international law," specifically, the U.N. Convention on Special Missions (the "convention").[3]

1. The United States has issued a diplomatic note setting forth the accreditation process for diplomats assigned to permanent missions. *See* Circular Diplomatic Note, dated May 1, 1985, and attachments (Government Exh. 1 at hearing); *see also* transcript at 264–65 (testimony of Lawrence Dunham, noting that the U.S. generally does not accredit advisors to special missions).

2. For the purposes of this opinion, the Court accepts that Sissoko was a Special Advisor to a Special Mission to the United States and that the United States was aware of and accepted such designation. This does not resolve whether the United States' "acceptance" of such designation

acted as notification that the U.S. granted full diplomatic status to Sissoko.

3. The Magistrate Judge held that the "the controlling law on the subject of diplomatic immunity is the Diplomatic Relations Act of 1978, 22 U.S.C. §§ 254a–254e, which established the Vienna Convention on Diplomatic Relations 'as the sole law of the United States on the subject.'" (quoting *Republic of Philippines v. Marcos*, 665 F.Supp. 793, 798 (N.D.Cal.1987)). The statement relied on in the case refers to the codification of the Vienna Convention as U.S. law, and the overruling of the statute of 1790, which had controlled diplomatic immunity prior to the

The Court does not find that the U.N. Convention on Special Missions is "customary international law" that binds this Court. Neither the United States nor The Gambia are signatories to the convention. None of the members of the U.N. Security Council have signed the convention. These facts indicate to this Court that there is, in the least, some resistance to the tenets of the convention such that it is not yet "customary international law." *See Third Restatement on Foreign Relations Law,* Reporter's note 14 (convention "*may* emerge as customary international law") (emphasis added).

Nor is there controlling Eleventh Circuit precedent. The Gambia's reliance on *Abdulaziz v. Metropolitan Dade Co.,* 741 F.2d 1328 (11th Cir.1984) is unavailing. In that case the State Department certified the prince as a diplomat. Here, no such certification has occurred, and indeed, The Gambia has not sought to have Sissoko certified by the State Department as a diplomat.

The Court is unpersuaded by defendant's argument that, contrary to the formal position of the State Department, a "Special Advisor" to a special mission in the United States should be accorded full diplomatic immunity merely by issuance of an A-2 visa, based on "customary international law" evidenced by a convention that has not been signed by either of the nations involved here.[4] According to the defendant's argument, no such diplomat need be on the State Department lists nor go through State Department accreditation in order to receive the same benefits and rights accorded diplomats to permanent missions. With this posi-

tion the Court does not agree. The United States has not signed the convention on special missions and this Court will refrain from judicially adopting the convention on the facts before it here.[5]

The Court has reviewed the transcript of the evidentiary hearing conducted by Magistrate Judge Bandstra, the arguments presented by counsel and the record herein. Although sensitive to the problem at hand, the Court cannot hold, on the facts before it, that Sissoko is entitled to full diplomatic immunity when such has not been conferred by the State Department.

adoption of the Vienna Convention. *See* Sen. Rep. No. 758, Cong., 2d Sess. 1, *reprinted in* 1978 U.S.Code Cong. & Admin.News 1935.

4. The May 1, 1985 enclosure to the Circular Diplomatic Note states unequivocally that to be recognized as a diplomatic agent by the State Department, the individual must hold an A-1 nonimmigrant visa (Government Exh. 1 at 3). The note concludes with the following:

"the Department reminds missions that privileges and immunities are not extended in the United States to persons assigned to temporary duty at a mission for a brief period of time.

Missions are advised that it is recommended that such temporary visitors be notified to the Department of State nonetheless because, as 'official guests', they are entitled to certain protections under U.S. domestic law."

(*id.* at 5). There is no indication in the record that Sissoko was notified to the Department of State as an official guest.

5. The Court has considered the remaining arguments raised by The Gambia and finds them to be without merit.